UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| BLANCHE T. SMITH | : | Case No. 1:15-CV-00760-MRB |
|---|---|---|
| | : | |
| | : | Judge Michael R. Barrett |
| Plaintiff, | : | |
| -vs- | : | |
| | : | |
| CASH AMERICA | : | |
| INTERNATIONAL, INC. | : | |
| | : | |
| Defendant. | : | |

# ORDER

This matter is before the Court on Defendant Cash America International, Inc.'s Motion to Strike Class Allegations ("Motion to Strike") (Doc. 19). After Plaintiff opposed and Defendant replied, the Court held the Motion to Strike in abeyance while the Parties conducted targeted discovery on five discrete issues:

1. Defendant's pawn loan business, practices, policies and procedures;
2. Defendant's jewelry authentication process, including practices, policies and procedures;
3. Defendant's policies and procedures specific to its Bond Hill store in 2015;
4. Defendant's recordkeeping systems, policies, procedures, and retention policies;
5. Defendant's employee training practices, policies, and procedures for jewelry authentication

(Doc. 16). The Parties have fully briefed the Motion to Strike (Docs. 19, 20, 21), and submitted supplemental memoranda (Docs. 31, 32) after conducting the above-referenced discovery. This matter is ripe for disposition.

## I. BACKGROUND

### a. Procedural Posture Relating to Motion to Strike

After the Parties performed targeted discovery, they indicated that they wished to submit

1

additional briefing, although they were initially uncertain of the form the briefing should take. Regardless, the Court expressed a willingness to allow the Parties to submit supplemental briefing, with the expectation that the Parties would inform the Court of the anticipated form of briefing. (June 30, 2017 Minute Entry); (Doc. 30, PageID 382-83).

Consistent with the June 30, 2017 Minute Entry, Plaintiff later sought leave to file a sur-reply to the Motion to Strike. (Doc. 27). Defendant then requested leave to file a response to Plaintiff's sur-reply. (Doc. 28). Plaintiff "vociferously disagree[d]" that such a response was appropriate. (Doc. 29). Ultimately, the Court granted Plaintiff leave to file a sur-reply; however, over Plaintiff's objection, it also granted Defendant leave to file a response to the sur-reply. (Doc. 30). The Court reasoned that "[g]iven that the Court allowed targeted discovery, and given the Court's earlier representation that it will allow the *Parties* to file supplemental briefing and follow up in approximately 90 days (June 30, 2017 Minute Entry), the Court would prefer to hear from both parties regarding how – if at all – extrinsic evidence gathered during targeted discovery should affect the Court's analysis of the pending Motion to Strike." (Doc. 30, PageID 384) (emphasis in original).

After the Parties finished their briefing, the Court took the matter under advisement.

### b. Factual Background

In her Complaint, Plaintiff makes the following allegations:

On August 11, 2015, Plaintiff visited a Cash America location in Bond Hill, Hamilton County, Ohio. (*Id.* at ¶ 19). She was interested in obtaining a "pawn loan" on a sterling silver metal cross with diamonds (hereinafter referred to as the "pendant"). (*Id.* at ¶¶ 19-20). Plaintiff had previously pawned items at Defendant's store. (*Id.* at ¶ 21). Defendant requested and Plaintiff acquiesced to allow Defendant to inspect the pendant. (*Id.* at ¶ 24). Defendant removed

the pendant from Plaintiff's line of sight and inspected it. (*Id.* at ¶ 25). Defendant then returned the pendant to Plaintiff, advising her that it would not make a "pawn loan" on her piece of jewelry. (*Id.* at ¶ 26). Plaintiff did not sign any paperwork or otherwise provide any information to Defendant. (*Id.* at ¶ 23). After leaving the store, Plaintiff discovered that the pendant had been cut and some form of acid poured over the pendant. (*Id.* at ¶ 27). Plaintiff has had no further contact with Defendant. (*Id.* at ¶ 29). She believes it would cost approximately $40-$45 to fix the pendant. (*Id.* at ¶ 28).

Plaintiff brought this action on behalf of herself and a putative National class and Ohio subclass (*Id.* at ¶ 31), asserting the following claims: 1) Trespass to Chattels; 2) Fraudulent Concealment/Nondisclosure; 3) Breach of Bailment; 4) Violation of Ohio Deceptive Trade Practices Act; 5) Violation of the Ohio Consumer Sales Practices Act ("OCSPA"); and 6) Declaratory Judgment/Injunctive Relief. (Doc. 3). The Court dismissed Count IV (Violation of Ohio Deceptive Trade Practices Act), but the other claims remain pending. The issue before the Court now is whether Plaintiff's claims asserted on behalf of the putative class should stand, or be stricken prior to the completion of discovery.

**II. ANALYSIS**

    **a. Standard**

Rule 23 of the Federal Rules of Civil Procedure outlines the elements necessary to maintain a class action. Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to these four requirements, a class action plaintiff must also

satisfy one of Rule 23(b)'s three subsections. At issue here are subsections (2) and (3), which require the Court to find either that:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. . . .

Fed. R. Civ. P. 23(b). A plaintiff's failure to satisfy Rule 23(a) and (b)'s requirements "dooms the class." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

"Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011). Striking deficient class allegations comports with Rule 23's directive that courts determine whether a class may be certified "[a]t an early practicable time." *Colley v. P&G*, No. 1:16-cv-918, 2016 U.S. Dist. LEXIS 137725, at *8 (S.D. Ohio Oct. 4, 2016) (Black, J.); Fed. R. Civ. P. 23(c)(1)(A). However, "courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Geary v. Green Tree Servicing, LLC*, No. 2:14cv522, 2015 U.S. Dist. LEXIS 35059, at *41-42 (S.D. Ohio Mar. 20, 2015). That said, a court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Pilgrim*, 660 F.3d at 945. Furthermore, "[t]his Court has specifically recognized its authority to strike class allegations

4

prior to the close of discovery when (1) the complaint itself demonstrates the requirements for maintaining a class action cannot be met, and (2) further discovery will not alter the central defect in the class claim." *Amerine v. Ocwen Loan Servicing LLC*, No. 2:14cv15, 2015 U.S. Dist. LEXIS 178248, at *5 (S.D. Ohio Mar. 31, 2015). *Accord: Rikos v. Procter & Gamble Co.*, No. 1:11cv226, 2012 U.S. Dist. LEXIS 25104, at *13 (S.D. Ohio Feb. 28, 2012) (striking class allegations where the class could not be certified as defined and "no proffered or potential factual development offer[ed] any hope of altering that conclusion."); *Loreto v. Procter & Gamble Co.*, No. 1:09—CV—815, 2013 U.S. Dist. LEXIS 162752, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13—CV—846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014); *Pilgrim*, 660 F.3d at 949.

Plaintiff's Ohio and National classes are defined as "consumers who . . . had jewelry appraised and inspected" by Cash America. (Compl. ¶ 31). As an overarching theme, Defendant asserts that, even assuming Plaintiff's allegations are true, no class can be certified based on the inspection process because liability and injury turn upon individual issues such as reliance, consent, waiver, proximate cause, and assumption of risk that are elements of Plaintiff's claims or Defendant's affirmative defenses. (Doc. 19, PageID 246-47). According to Defendant, the class allegations should be stricken for the following reasons: (1) the class is not ascertainable, and includes persons who lack standing; (2) Plaintiff's proposed class lacks predominance; (3) Plaintiff's claims are not typical of the putative class; (4) Plaintiff's proposed class lacks commonality; (5) Plaintiff is not entitled to injunctive relief; (6) Plaintiff's National Class must be stricken; and (7) Plaintiff lacks standing to assert claims on behalf of class members from states other than Ohio. There is some disagreement in this district regarding who bears the burden at the motion to strike phase. *Compare Progressive Health*, 323 F.R.D. at 245; *Geary*,

5

2015 U.S. Dist LEXIS 35059, at * 40, *with Kimber Baldwin Designs, LLC v. Silv Communs., Inc.*, No. 1:16-cv-448, 2016 U.S. Dist. LEXIS 173481, at *3-4 (S.D. Ohio Dec. 15, 2016). The Court will assume without deciding that Defendant bears the burden of establishing that Plaintiff will be unable to demonstrate facts supporting certification.

1. Ascertainability/Standing

Defendant argues that the class is not ascertainable because "persons, like Plaintiff, who did not enter into a pawn loan or purchase transaction cannot be identified through objective criteria because Cash America does not keep records of persons that merely had their jewelry inspected." (Doc. 19, PageID 248-49). According to Defendant, "non-objective evidence and individualized fact-finding [are] necessary to identify these class members," thus dooming the class and subclass. (*Id*. at 249).

Defendant's argument regarding ascertainability is well taken. If a court must engage in individualized fact-finding to determine class membership, a class cannot be certified. *See Romberio v. UNUMProvident Corp.*, 385 F.App'x 423, 431 (6th Cir. 2009); *Barrett v. ADT Corp.*, No. 2:15-cv-1348, 2016 U.S. Dist. LEXIS 28767, *23 (S.D. Ohio Mar. 7, 2016). Similarly, persons who either sold or surrendered (as collateral for a pawn loan) their jewelry to Cash America have no legally protected interest in such jewelry because they received the benefit of their bargain—they thus lack standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The Court is not swayed by Plaintiff's arguments in support of ascertainability. Because Defendant's Motion to Strike relied on information beyond the pleadings to argue that it does not

6

keep records of individuals who failed to enter into a transaction with Cash America, the Court allowed Plaintiff to take discovery regarding Defendant's record-keeping practices and related issues. Now, Plaintiff contends that the Rule 30(b)(6) designee made available by Defendant was inadequate. However, Defendant persuasively argues that Plaintiff failed to raise any such discovery issues with the Court. (Doc. 32, PageID 425). And, even if Plaintiff had properly challenged the adequacy of the Rule 30(b)(6) designee, it is unlikely that the Court would have found the designee's knowledge on record-keeping to be inadequate. The Rule 30(b)(6) deposition: (1) establishes that the designee was sufficiently knowledgeable, having written and trained employees on Defendant's policies; and (2) supports that "Cash America does not keep records of persons who did not enter into a jewelry transaction (category 1)." (Doc. 19-3, PageID 298); (J. Phillips Dep., pp. 32, 62) (Ex. C). Thus, ascertaining a class of such individuals would not be possible without individual fact-finding. *Romberio*, 385 F.App'x at 431; *Barrett*, 2016 U.S. Dist. LEXIS 28767, at *23. And again, persons who either sold or surrendered (as collateral for a pawn loan) their jewelry to Cash America have no legally protected interest in such jewelry because they received the benefit of their bargain. *Lujan*, 504 U.S. at 560–61.

Accordingly, Plaintiff's proposed class (including the sub-class) fails because the proposed class includes individuals who are not ascertainable or have no standing.

2. Predominance

Defendant also argues that Plaintiff cannot satisfy the predominance requirement of Rule 23(b)(3), reasoning that "individual issues outweigh common issues because the existence of injury-in-fact, justifiable reliance on Cash America's alleged statements or omissions, consent to Cash America's inspection, proximate cause, and Cash America's affirmative defenses vary as to

7

each class member." (Doc. 19, PageID 249).

Plaintiff contends that Defendant exaggerates the complexity of the inquiry. Largely ignoring Defendant's other arguments (proximate cause, injury-in-fact, etc.), Plaintiff argues that the consent issue is simple: no proposed class member is capable of consenting, because Defendant's standard practice is to withhold critical information regarding Defendant's inspection process. To support this factual proposition, Plaintiff asks the Court to accept the following series of inferences: Defendant's standard practice is to ask for consent to inspect, but to withhold information regarding its inspection method; thus, Defendant does not inform proposed class members that filing/acid is used during the inspection process; otherwise, no putative class member would ever acquiesce, because acquiescence to such filing/acid would be "illogical and preposterous." (Doc. 20, PageID 311).

This argument is not well taken. Defendant produced training materials showing that employees are instructed to seek permission to inspect jewelry, and to inform prospective customers of the employee's "intent to cut a small groove for testing." (Doc. 19-2, PageID 296). The Rule 30(b)(6) designee affirmed this practice in his deposition. (Doc. 31-1, PageID 398). Plaintiff maintains that employees are instructed to conceal the method of the inspection process. Regardless of which Party is correct, some employees might deviate from Defendant's standard practice, some may not; Some customers may receive a perfect explanation of the inspection method, some may not; Some customers may acquiesce to the inspection based on a perfect explanation of the inspection method, some may not; Some customers may acquiesce to the inspection based on an imperfect explanation of the inspection method, some may not. These various scenarios do not even include the nuances affecting Defendant's interactions with repeat

8

customers, who may acquiesce to the inspection based on pre-existing knowledge of the inspection process. The existence of various manners in which consent may be obtained, imperfectly obtained, or not obtained at all is precisely the reason why consent to inspection cannot be determined on a classwide basis—and the Court simply cannot conduct mini-trials examining the specific circumstances of over 1,000,000 interactions between Cash America and its customers in over 100 stores in Ohio alone. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011); *In re American Med. Systems., Inc.*, 75 F.3d 1069 (6th Cir. 1996); *Rodney v. Northwest Airlines, Inc.*, 146 F. App'x 783 (6th Cir. 2005); *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011); *Butler v. Sterling, Inc.*, No. 98-3223, 2000 U.S. App. LEXIS 6419 (6th Cir. Mar. 31, 2000); *Hale v. Enerco Group*, 288 F.R.D. 139 (N.D. Ohio 2012). The inquiries regarding proximate cause, injury-in-fact, and virtually all of Cash America's defenses suffer from the same problem. Indeed, analyzing injury-in-fact alone on a classwide basis is impossible, because even Plaintiff's proffered expert establishes that that the practice of filing and using acid to inspect jewelry is not harmful to jewelry in and of itself. (Cleves Rep. ¶¶ 27-29) (Doc. 15-1). Defendant persuasively argues that, even under Plaintiff's theory, whether a file and acid were appropriate *in a given instance*, and if so, whether their use indeed caused damage *in a particular instance,* are individual inquiries.

Simply put, individual issues outweigh common issues.

3. Typicality

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir.

1998).[1]

Here, Defendant argues that Plaintiff's claim is not typical, because establishing Defendant's liability for Plaintiff's individual claim will not establish Defendant's liability for the claims of each individual proposed class member. In other words, the case would degenerate into a series of individual trials. Plaintiff disagrees, and argues that her claims are typical of the entire putative class, because all claims "arise from the same practice," "affect the class members in the same manner," and "arise from the same legal theories." (Doc. 21, PageID 348).

The Court is persuaded by Defendant's argument that "proof of Plaintiff's claim would not establish liability for other putative class members because issues of reliance, consent, waiver, causation, injury, and other elements and defenses, must be evaluated for each class member prior to determining liability." As discussed *supra*, putative class members submitting their jewelry to an inspection will have different experiences. To be clear, the Court is not requiring each putative class member to have an "identical" experience to that of Plaintiff; however, Plaintiff's ability to establish Defendant's liability and defeat certain defenses offers little if any indication of how the claims of putative class members would fare. Consequently, Plaintiff cannot satisfy typicality under Rule 23(a)(3).

---

1 Defendant cites a number of individualized defenses that defeat typicality; however, Plaintiff argues that defenses are not relevant to the Court's typicality analysis. (Doc. 20, PageID 313) (citing *Ross v. RBS Citizens, N.A.*, 2010 WL 3980113, at *3 (N.D.Ill. Oct. 8, 2010)). Sixth Circuit jurisprudence suggests otherwise. *Romberio*, 385 F. App'x at 431. As the Sixth Circuit observed in *Romberio*, "where there are defenses unique to the individual claims of the class members, the typicality premise is lacking, for--under those circumstances--it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Id.* (internal citation omitted).

4. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Dukes*, 131 S. Ct. at 2551 (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id*. As explained by the Supreme Court in *Dukes*:

> Title VII, for example, can be violated in many ways – by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury. . . gives no cause to believe that all their claims can productively be litigated at once. *Id*. While it is true that even a single common question will sometimes suffice, "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Id*. The role of consent impacts several Rule 23 elements, but primarily commonality and predominance. *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1011 (N.D. Ill. 2015) ("[C]onsent may be highly individualized, making class treatment potentially inappropriate under either Rule 23(a)(2)'s commonality requirement or, more obviously, Rule 23(b)(3)'s predominance requirement.").

Here, Plaintiff contends that the commonality test is met because "Defendant's standard jewelry practices damage Plaintiff and other class members in the same manner." (Doc. 20, PageID 314). Built into Plaintiff's allegations are numerous factual issues that relate to consent, including what Plaintiff knew, what was explained to her, and what she understood. But the nuances of these interactions and Plaintiff's knowledge are unique to Plaintiff; particularly in the context of fraudulent concealment, they cannot be imputed to the class. *EQT Prod. Co. v. Adair*,

11

764 F.3d 347,370 (4th Cir. 2014) (A "plaintiff's knowledge typically requires individual evidence").

5. Injunctive Relief

Plaintiff asks the Court to enjoin Defendant "to stop its deceptive and misleading practices." (Compl. ¶ 72).

Defendant argues that Plaintiff's request for injunctive relief is improper for two reasons: First, Plaintiff's alleged harm is adequately redressed in monetary damages, thus making injunctive relief improper. Second, conclusory "obey the law" injunctions are void. (Doc. 21) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir.1984)). According to Defendant, Plaintiff cannot circumvent the requirements of Rule 23(b)(3) by "nebulously seek[ing]" preliminary and permanent injunctive relief under Rule 23(b)(2). (Doc. 19, PageID 267). Plaintiff counters that she should be allowed to plead an alternative basis for relief.

The Court agrees with Defendant that Plaintiff's "alternative" request for an injunction does not save Plaintiff's class allegations. Plaintiff's failure with respect to typicality alone is fatal to any hope of certifying a Rule 23(b)(2) class. *Pilgrim*, 660 F.3d at 946.

6. National Class/Standing to Represent Non-Ohio Class Members

Defendant also asks that the National class be stricken, for the same reasons her Ohio class fails—only "amplified":

> "The Ohio Subclass would require individual adjudication of over

> 1,000,000 transactions. The National Class, however, would
> require individualized adjudication of over 15,000,000 transactions
> in approximately 800 stores under the laws of the 22 different
> states in which Cash America entered into jewelry transactions.
> Such an effort is both unworkable and inconsistent with Rule 23."

(Doc. 19, PageID 250) (internal citations omitted) (citing *Pilgrim*). The Court agrees. Regardless of Plaintiff's standing, the National class suffers from the same defects as her Ohio subclass, and will be stricken.

### III. CONCLUSION

For the foregoing reasons, and consistent with the above, Defendant Cash America International, Inc.'s Motion to Strike Class Allegations (Doc. 19) is **GRANTED**. Plaintiff may pursue her individual claim against Defendant. However, the above captioned matter is **REMANDED** to the Clerk for the Court of Common Pleas for Hamilton County, Ohio because this Court lacks subject matter jurisdiction, given the diminished amount in controversy in this case.

**IT IS SO ORDERED.**

                                                      s/Michael R. Barrett
                                                      Hon. Michael R. Barrett
                                                      United States District Judge